UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RONALD L. SHERIDAN, JR.  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>U.S. OFFICE OF PERSONNEL  )<br>MANAGEMENT,  )<br>  )<br>Defendant.  )<br>  ) | Case No. 16-cv-00805 (KBJ) |

**COMBINED REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION**

Plaintiff's limited objections to Defendant's search and application of exemptions 2 and 7(E) are insufficient to defeat Defendant's motion for summary judgment.

**I.   OPM CONDUCTED A REASONABLE SEARCH.**

Under the FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."). OPM established in its motion that it conducted a reasonable search for records responsive to Plaintiff's FOIA request. That search uncovered computer source code information for the e-QIP system, as well as a 79 page design manual and 109 page operations manual. (Anderson Decl. ¶¶ 12-13).

Plaintiff does not identify any documents that Plaintiff believes should have been located by OPM's search that OPM failed to locate. Instead, Plaintiff takes issue with the reasonableness

of OPM's search by making a conclusory assertion that OPM failed to adequately describe its search methodology. That is incorrect. As set forth in the Anderson declaration that accompanied Defendant's motion, the source code sought in Plaintiff's FOIA request is maintained in a central repository at the contractor's facility in Oakridge, Tennessee, as well as delivered to OPM for deployment approximately every quarter, and access to that source code is strictly limited within OPM and at the contractor's complex. (Anderson Decl. ¶ 12) OPM searched for the requested source code by contacting staff within the Office of Chief Information Officer who had access to the OPM maintained source code. (*Id.*) Given the limited access within OPM to the source code, and its maintenance in a central repository at the contractor's facility, that search was reasonably calculated to locate responsive documents to the extent the request sought e-QIP source code. (*Id.*)

OPM likewise explained the search that it conducted for design and operations manuals. Specifically, OPM explained that design and operations manuals for e-QIP are prepared by a government contractor and are provided by that contractor to an office within OPM – the Federal Investigative Services ("FIS") IT Business Solutions Program Management Office – that manages the e-QIP software application and that is supported in that work by the Office of the Chief Information Officer. (*Id.* ¶ 2, 13) OPM's request to OPM-FIS and OPM-CIO staff to provide copies of any design and operations manuals was reasonably calculated to locate responsive records because those are the two offices within OPM with responsibility for managing the e-QIP software application.

Plaintiff's remaining arguments fail to call into question the adequacy of Defendant's search. Plaintiff contends that the Anderson declaration failed to identify the names of the staff members who conducted the search, but Plaintiff does not identify any case authority to suggest that such information is necessary to establish the reasonableness of a search. Plaintiff also

questions whether the e-QIP source code always was maintained in a central repository and states that the Anderson declaration fails to address that issue. This contention is not only speculative, but immaterial. The relevant question is whether the search was reasonably calculated to locate responsive records. Given the limited access within OPM to the source code, and its maintenance in a central repository at the contractor's facility, OPM's search was reasonable.

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). Rather, a search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68. An agency, moreover, is not required to examine "virtually every document in its files" to locate responsive records." *Steinberg v. Dept. of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994; *see also Hall v. U.S. Dep't of Justice*, 63 F. Supp. 2d 14, 17-18 (D.D.C. 1999) (finding that agency need not search for records concerning subject's husband even though such records may have also included references to subject). Rather, as here, it is appropriate for an agency to search for responsive records in accordance with the manner in which its records are maintained. *Greenberg v. Department of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

## II. OPM PROPERLY APPLIED FOIA EXEMPTIONS 2 AND 7(E)

### A. OPM PROPERY APPLIED EXEMPTION 7(E)

OPM has invoked Exemption 7 to protect the source code for its e-QIP background investigation system, as well as design and operations manuals for e-QIP. The records at issue were compiled for a law enforcement purpose and thus satisfy the threshold requirement of Exemption 7. *See, e.g., Mittleman v. OPM*, 76 F.3d 1240 (D.C. Cir. 1996) (upholding OPM's

withholding of background investigation information under Exemption 7(D) of FOIA); *Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir. 2007) (citing *Mittleman*, and upholding withholding based on exemption 7(E) of the CIA's security clearance techniques involving a general process applied to all background investigations of its officers).

Plaintiff contends that *Mittleman* is inapplicable because the information at issue there pertained to certain private information collected during the background investigatory process, not "the tools or processes that support the background investigative process." In making this argument, Plaintiff misunderstands the relevance of *Mittleman* to Defendant's argument. Defendant cited *Mittleman* to establish that OPM's background investigatory function is subject to Exemption 7 of FOIA, not that Exemption 7(D) – the specific exemption at issue in *Mittleman* – applies to the information at issue here. OPM is not claiming Exemption 7(D) over the requested information, but Exemption 7(E) because disclosure of the information could reasonably be expected to risk circumvention of the law. The threshold requirement for any Exemption 7 withholding – whether 7(D), 7(E) or otherwise – is that the records at issue were compiled for a law enforcement purpose, *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011), and *Mittleman* establishes that OPM meets that threshold requirement with respect to the records at issue here.

As to whether the records at issue satisfy the specific requirements of Exemption 7(E), Plaintiff's own evidence establishes that that standard is met. For Exemption 7(E) to apply, the agency need only establish that disclosure "could reasonably be expected to risk circumvention of the law," not that the risk be a "significant" one. *See Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)). In support of his cross-motion, Plaintiff attaches a Risk Assessment that purports

4

to assess the likelihood of a threat event to occur if the e-QIP source code were publicly disclosed, as well as the likely adverse impacts resulting from such a threat event.

OPM contends that that Risk Assessment fails to fully consider the risks of disclosure of the source code, design and operations information. Nevertheless, even if the Court were to credit that Risk Assessment, Plaintiff's own assessment concludes that there is at least a "Moderate" increase in the likelihood of a threat event to result from the disclosure of e-QIP source code and that such a threat event would be "highly likely" to have adverse impacts. (Ex. 3 to Said Decl., Risk Assessment) Although the Risk Assessment concludes that the overall risk is "Moderate" and not "Significant," Exemption 7(E) does not draw such distinctions. Accordingly, by making this proffer, Plaintiff effectively concedes that Exemption 7(E) applies because Plaintiff's own assessment establishes that disclosure could reasonably be expected to risk circumvention of the law.

In any event, OPM has amply demonstrated the applicability of Exemption 7(E) in the Anderson declaration that accompanied its motion. In that declaration, OPM explained that the e-QIP system "serves as a direct access point as well as repository for a vast and rich volume of information that is highly sensitive to the law enforcement purposes served by OPM's background investigations responsibilities." (Anderson Decl. ¶ 28) OPM further explained that the requested source code, used in conjunction with the requested manuals, "could enable a malicious actor or wrongdoer to identify exploitable configurations within the software, map how data is handled by the system and define how and where to 'attack the code.'" (*Id.* ¶ 29) OPM also explained that disclosing the requested information could also expose other sensitive information related to background investigations and undermine the integrity of that process. (*Id.* ¶¶ 30-33) The risk of circumvention here, moreover, is more than hypothetical. OPM has previously been the subject

of cyber-intrusions that impacted background investigation records similar to the information contained in the e-QIP system. (*Id.* ¶ 28)

Plaintiff cites to a memorandum regarding the use of open-source software as evidence that disclosure of the requested information would be in the public interest. That memorandum is immaterial to the Exemption 7(E) issues because it pertains to "open-source software" generally, not to the source code underlying the e-QIP system. And, even if Plaintiff could establish a public interest in the information, that would not trump the application of Exemption 7(E), which permits withholding of information that might be of public interest if it could reasonably be expected to risk circumvention of the law.

### B.  OPM ALSO PROPERLY RELIES ON EXEMPTION 2 OF FOIA.

OPM maintains that all of the requested information is properly withheld under Exemption 7(E) because the disclosure of any of the source code, or any portion of the design or operations manuals, could reasonably risk circumvention of the law. (Anderson Decl. ¶¶ 26-35) However, even if some aspect of the requested information could be segregated from the material covered by Exemption 7(E), which Defendant disputes (Anderson Decl. ¶¶ 34-35), OPM still has properly withheld that information under Exemption 2 of FOIA. The requested source codes and design and operations manuals relate "solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). They are of interest only to the OPM employees involved in maintaining and operating the e-QIP system, and there is no legitimate public interest in that information that Plaintiff has identified.[1] *See Cox v. DOJ*, 602 F.2d 1, 5 (D.C. Cir. 1979) (purely internal, personnel

---

[1]  To the extent there is an interest in knowing what information OPM considers significant when it conducts background investigations, and the type of information that could influence the outcome of those investigations, that would fall squarely within Exemption 7(E) to the extent it could be revealed by the source code and design and operations information sought in the FOIA request at issue. (Anderson Decl. ¶¶ 25, 31)

6

information in Marshals' Manual is "of legitimate interest only to members of the Marshals' staff" and thus properly withheld under Exemption 2).[2]

Thus, to the extent certain functions of e-QIP could be characterized as "relatively uninteresting mundane administrative tasks" as Plaintiff contends, and to the extent that information could be reasonably segregated from information covered by Exemption 7(E) (which Defendant disputes), any such information still would be exempt from disclosure under Exemption 2 because the information relates solely to "internal personnel rules and practices." The information requested by Plaintiff concerns how the applicant and background investigation information is stored and processed within OPM for the purposes of making personnel decisions, thus meeting the requirements of Exemption 2 of FOIA. (Anderson Decl. ¶ 25) Plaintiff's contention that aspects of the requested information are "mundane", and on that basis not subject to Exemption 7(E), fails to account for the application of Exemption 2 over that information. (*Id.*)

In other words, even if Plaintiff could establish that some "relatively uninteresting mundane" segregable information might exist that would not be covered by Exemption 7(E), Plaintiff still would not be entitled to that information because that characterization is consistent with information that relates to internal personnel matters properly withheld under Exemption 2. Because the premise of Plaintiff's argument in this regard is that the information is "uninteresting" and "mundane," and thus of interest only internally within OPM, the memorandum cited by Plaintiff regarding the use of open-source software also is immaterial to the Exemption 2 issue.

---

[2] In their summary judgment motion, Defendants also cited *Sack v. DOJ*, 138 F. Supp. 3d 10 (D.D.C. 2015). The aspect of that decision as it pertains to Exemption 2, however, has since been vacated by the D.C. Circuit on the procedural ground that the Exemption 2 issue became moot during appeal. *See Sack v. DOJ*, Case No. 15-5341, Per Curiam Order (Dec. 9, 2016) (Doc. #1650199).

### C. OPM Complied With FOIA's Segregability Requirement

Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

OPM has determined that Exemption 7(E) applies to all of the requested information and that non-exempt material could not be segregated in a manner that would provide meaningful information. (Anderson Decl. ¶¶ 34-35) Moreover, even if some of the requested information could be viewed as falling outside Exemption 7(E), OPM has determined that that information is "inextricably intertwined" with exempt information and that reasonable segregation therefore is not possible (*Id.*). *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

In addition, the D.C. Circuit has held that "a court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead*

*Data*, 566 F.2d at 261, n.55. Thus, even if it was theoretically possible to segregate and release some source code in a manner that would not compromise the security of the e-QIP system, the resulting release would be of such minimal informational content that such an endeavor is not required by FOIA. (Anderson Decl. ¶ 34-35)

Finally, even if the Court were to assume that some information is not subject to Exemption 7(E), and that any such information could be segregated in a meaningful manner from the rest of the requested information, that same information still would remain subject to Exemption 2 for the reasons discussed above. (Anderson Decl. ¶ 35) Accordingly, OPM has properly withheld the requested information, whether under Exemption 2 or 7(E), or some combination of both, and summary judgment therefore should be granted.

## CONCLUSION

For the reasons set forth above, and those set forth in Defendant's motion, Defendant respectfully requests that this Court grant summary judgment in favor of OPM as to all claims in this case.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: _____/s/_____
JEREMY S. SIMON
D.C. BAR # 447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2528
Jeremy.Simon@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of December, 2016, I caused the foregoing, and accompanying Defendant's Response to Plaintiff's Local Rule 7(h) Statement and proposed order, to be served by depositing them in first-class mail, postage pre-paid, and addressed as follows:

RONALD L. SHERIDAN, JR.
345 North Springdale Road
Westminster, MD 21158-4043

/s/ *Jeremy S. Simon*
JEREMY S. SIMON
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2528